IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Jason S., ) | |
| ) | |
|     *Plaintiff*, ) | |
| ) | Case No. 3:20-cv-50162 |
| v. ) | |
| ) | Magistrate Judge Lisa A. Jensen |
| Kilolo Kijakazi, ) | |
| Acting Commissioner of Social Security,[1] ) | |
| ) | |
|     *Defendant*. ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff Jason S. brings this action under 42 U.S.C. § 405(g) seeking reversal or a remand of the decision denying his social security benefits.[2] For the reasons set forth below, the Commissioner's decision is affirmed.

**I. Background**

In April 2014, Plaintiff had an accident while working in which he fell and injured his right knee. R. 876, 947. Plaintiff testified that he quit work as a result in September 2014. R. 45-46. Plaintiff has had two surgeries related to his knee injury – the first in September 2014 and the second in August 2015. R. 645. He testified that neither surgery was helpful. R. 46.

In October 2017, Plaintiff filed an application for disability benefits. R. 174. He was 45 years old at the time he filed his application. *See* R. 947. At the hearing, Plaintiff amended the alleged onset date from September 29, 2014 to January 3, 2018. R. 40. His claim was denied

---

[1] Kilolo Kijakazi has been substituted for Andrew Marshall Saul. Fed. R. Civ. P. 25(d).
[2] The parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings pursuant to 28 U.S.C. § 636(c).

initially and upon reconsideration. R. 104, 112. Thereafter, he filed a written request for a hearing. R. 119. The hearing was held on April 9, 2019. R. 37.

Following the hearing, an administrative law judge ("ALJ") issued a decision on May 5, 2019, finding that Plaintiff was not disabled. R. 22-31. The ALJ found that Plaintiff had the following severe impairments: right knee meniscus tear; tendonitis; degenerative joint disease; status post meniscal and tendon surgeries; lumbar degenerative disc disease; and mild obesity. R. 24. The ALJ determined that Plaintiff's impairments did not meet or medically equal a listed impairment. R. 25. The ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform light work in that he can lift and carry 20 pounds occasionally and 10 pounds frequently, except that he can stand and/or walk about 2 hours and sit about 6 hours of an 8-hour workday, can never climb ladders, ropes, or scaffolds, kneel, crouch or crawl, but can occasionally climb ramps and stairs, balance, and stoop. R. 25. The ALJ determined that Plaintiff could not perform his past relevant work, but there were other jobs that existed in significant numbers in the national economy that he could perform. R. 30. Plaintiff appealed the ALJ's decision to this Court in May 2020.

## II. Standard of Review

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). If supported by substantial evidence, the Commissioner's factual findings are conclusive. *Id.* Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). "An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions." *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021)

(citations omitted). The reviewing court may not "reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021).

### III. Discussion

#### A. Listing 1.02

Plaintiff first argues that the ALJ performed a perfunctory analysis of Listing 1.02. A claimant is eligible for benefits if he has an impairment that meets or equals an impairment found in the listing of impairments. 20 C.F.R. § 404.1520(d). The listings specify the criteria for impairments that are considered presumptively disabling. 20 C.F.R. § 404.1525(a). A claimant may also demonstrate presumptive disability by showing that his impairments are accompanied by symptoms that are equal in severity to those described in a specific listing. 20 C.F.R. § 404.1526(a). Therefore, at step three of the sequential evaluation process, in "considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing." *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015) (quoting *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)); *accord Jeske v. Saul*, 955 F.3d 583, 588 (7th Cir. 2020). However, the ALJ's decision must be read as a whole and an ALJ's RFC analysis may doubly explain how the evidence shows that the claimant is not presumptively disabled under the pertinent listing. *Jeske*, 955 F.3d at 590; *see also Zellweger v. Saul* 984 F.3d 1251 (7th Cir. 2021).

Listing 1.02 refers to a "major dysfunction of a joint(s) (due to any cause)."[3] It is characterized by:

---

[3] In April 2021, Listing 1.02 was removed and replaced with Listing 1.18. *See* Revised Medical Criteria for Evaluating Musculoskeletal Disorders, 85 Fed. Reg. 78164 (Dec. 3, 2020). However, courts must

3

> [G]ross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With . . . [i]nvolvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b . . .

20 C.F.R. § Pt. 404, Subpt. P, App. 1 (2018). The regulations state:

> Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. . . To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

*Id*.

With respect to this listing, the ALJ wrote: "Specifically, the record fails to demonstrate that the claimant has significant restriction of function in his affected joints resulting in the inability to ambulate effectively." R. 25. Plaintiff argues that the ALJ's one-sentence analysis is the type of "perfunctory analysis" that requires reversal. Pl.'s Br. at 9, Dkt. 21. His reasons are two-fold: (1) the ALJ did not provide any explanation of how or why the criteria for the listing were not met; and (2) the ALJ failed to consider and address the evidence supporting a finding that Plaintiff met

---

apply the version of the listing in effect at the time the ALJ issued the decision. *See McCavitt v. Kijakazi*, 6 F.4th 692, 694 (7th Cir. 2021); *Gregory J. v. Kijakazi*, 19 CV 2475, 2021 WL 5906065, at *2 (N.D. Ill. Dec. 14, 2021). Therefore, the Court will analyze this appeal under Listing 1.02, which was in effect at the time the ALJ issued her decision.

4

the listing. *Id*. at 11-12. In support of his argument, Plaintiff points to *Minnick*, 775 F.3d 929. There, the Seventh Circuit found that the ALJ's two-sentence listing analysis was inadequate because, beyond those two sentences, she provided no analysis to support her conclusion and failed to acknowledge several aspects of the record that could meet or equal the relevant listing. *Id*. at 936. While Plaintiff acknowledges that after its ruling in *Minnick* the Seventh Circuit has held that the RFC discussion can "doubly explain" a step-three listing finding, he argues nonetheless that, in this case, the ALJ's RFC discussion in no way explained why Plaintiff was able to "effectively ambulate." [4] Pl.'s Br. at 12-13, Dkt. 21 (citing *Jeske*, 955 F.3d 583).

The Commissioner argues, and this Court agrees, that the ALJ sufficiently supported her conclusion at step three in her discussions elsewhere in the opinion. Def.'s Br. at 5, Dkt. 26. Specifically, the ALJ noted the following relating to Plaintiff's ability to ambulate: Plaintiff reported being able to ambulate without the use of an assistive device; the impartial medical expert at the hearing, Dr. Goldstein, opined that Plaintiff's January 2017 knee x-ray results, which showed only mild osteoarthritis with no acute osseous abnormality, were insufficient to cause the decreased range of motion Plaintiff had alleged; Plaintiff had been searching for employment that required walking as a primary job function; Plaintiff's physicians noted inconsistencies in his gait and symptomatology – specifically referring to medical records noting that Plaintiff was observed walking without an antalgic gait in the hallway but then walking with an antalgic gait in the exam room; despite Plaintiff's May 2018 presentation with a markedly abnormal gait he could still heel and toe walk bilaterally and demonstrated good hip range of motion; and the independent medical examiner, Dr. Cohen, stated that there were no objective findings on examination to support

---

[4] Plaintiff's argument implies that it is the ALJ's burden to show why Plaintiff did not meet or equal a listing; however, it is important to remember that it is *Plaintiff's* burden to show that his impairments met or equaled a listing. *See Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006).

5

Plaintiff's marked antalgic gait aside from very mild swelling of the patellar tendon. *Id.*; *see* R. 26-27.[5] The above analysis is not perfunctory and explains why the ALJ determined that Plaintiff had not demonstrated an inability to effectively ambulate. The Court finds that the ALJ's explanation for her listing assessment is supported by substantial evidence.

Plaintiff argues that the ALJ did not consider specific pieces of evidence of "ineffective ambulation." He cites his testimony about his inability to effectively ambulate on uneven surfaces; Dr. Hastings' note in January 2015 that Plaintiff should not walk on uneven surfaces; numerous physicians opining that he was unable to walk more than 2 hours out of an 8-hour day; and numerous physicians documenting his antalgic gait. Pl.'s Br. at 11-12, Dkt. 21. However, as set forth above, the ALJ *did* discuss Plaintiff's physicians' notes documenting his antalgic gait, but she was unpersuaded that this evidence established an inability to effectively ambulate because of the inconsistencies in Plaintiff's gait and the lack of objective evidence to support his antalgic gait. *See* R. 26-28. Regarding Plaintiff's alleged inability to walk more than 2 hours in an 8-hour day, it is unclear how this constitutes evidence of an inability to ambulate effectively sufficient to meet Listing 1.02, and Plaintiff does not provide any explanation on this matter.[6] *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1 (2018) (definition and explanation of the term "ambulate effectively"). With

---

[5] In addition, this Court's review of the record revealed that on Plaintiff's function reports from October 2017 and March 2018, Plaintiff reported mowing his lawn and going grocery shopping 2-3 times a week. R. 343-44, 368-69. This is notable because the listing regulation specifically includes the inability to shop as an example of the inability to ambulate effectively. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1 (2018) ("[E]xamples of ineffective ambulation include . . . the inability to carry out routine ambulatory activities, such as shopping."). On multiple occasions, Plaintiff noted that he was able to go out alone and do errands without assistance. R. 344, 364, 369. This, too, is referenced in the listing regulation. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1 (2018) ("To ambulate effectively, individuals . . . must have the ability to travel without companion assistance and to and from a place of employment or school.").

[6] Walking and standing for no more than 2 hours of an 8-hour day is a characteristic of "sedentary work" as defined in 20 C.F.R. § 404.1567(a). Taking Plaintiff's argument to its logical conclusion would mean that an ALJ's finding that a claimant was only capable of sedentary work would automatically equate to ineffective ambulation under Listing 1.02. Nowhere in the regulations does the SSA indicate that sedentary work automatically corresponds to a finding of ineffective ambulation.

respect to Dr. Hastings' treatment note from January 2015, the Court finds that it was not error for the ALJ not to discuss this note as it was made three years before the alleged onset date and there are no other treatment notes in the record to corroborate this limitation, much less any notes from the relevant period. *See Franks v. Saul*, 3:19-CV-979-JD, 2020 WL 6268807, at *3 (N.D. Ind. Oct. 23, 2020) ("The ALJ properly supported this decision with medical evidence in the record, and Mr. Franks cannot rely on medical evidence well outside the relevant period."); *Van Remmen v. Saul*, 18-C-965, 2019 WL 4166795, at *5 (E.D. Wis. Sept. 3, 2019) (the ALJ was entitled to disregard a line of evidence that predated the relevant period by several years). Finally, Plaintiff's allegation that the ALJ failed to address his testimony that he could not effectively ambulate on uneven services is not supported by the record. The ALJ recognized that Plaintiff alleged in his hearing testimony that he had difficulty walking, R. 26, but she found that his portrayal of his symptoms was not entirely credible based on several factors, including his activities of daily living, his lack of treatment, lack of consistent use of pain medication, and his searching for jobs that required standing and walking. R. 26-28. As such, the Court concludes that the ALJ did not fail to consider Plaintiff's purported evidence supporting ineffective ambulation.[7]

Based on all the information above, the Court finds that the ALJ's RFC discussion also sufficiently explained the ALJ's step-three listing finding and that the listing finding was supported by substantial evidence

**B. RFC**

---

[7] In defense of the listing analysis, the Commissioner also asserts that the ALJ relied on three medical opinions stating that Plaintiff did not meet Listing 1.02. Def.'s Br. at 6, Dkt. 26. Plaintiff responds that, while the ALJ did go through the various medical opinions, she only weighed those opinions in making the RFC finding, not in her finding with respect to the listings. Pl.'s Reply at 3, Dkt. 27; *see* R. 28-29. The Court has determined that the ALJ's listing analysis was supported by substantial evidence without reference to those opinions. As such, this Court need not determine whether the three expert opinions constitute additional substantial evidence to support the ALJ's listing analysis.

7

Plaintiff relies on three bases for his argument that the ALJ improperly assessed his RFC: (1) the ALJ failed to address his need to frequently elevate his leg; (2) the ALJ found his lack of treatment between December 2015 and May 2018 to be evidence of "tolerance of his symptoms"; and (3) the ALJ used Plaintiff's testimony that he was looking for work at jobs where he would be standing as evidence that his knee condition "would not impair his ability to perform such tasks." Pl.'s Br. at 13-15, Dkt. 21. The Court addresses each of these arguments below.

**1. Leg elevation**

At the hearing, Plaintiff testified that he needs to elevate his foot to at least waist height for 20 minutes an hour, typically in a recliner, in order to relieve his pain. R. 45, 49, 53. He testified that this limitation precluded him from finding employment. R. 45. Additionally, Plaintiff's treating APN/CNP,[8] Kathleen Meade, opined that Plaintiff's need to elevate his leg would affect work-related activities. R. 968. Plaintiff asserts that the ALJ's decision did not address this limitation or incorporate it into the RFC, nor did the ALJ make any credibility determinations such that this limitation should be ignored. Pl.'s Br. at 13, Dkt. 21.

There are several problems with Plaintiff's argument. First, the only places in the record that reference Plaintiff's need to elevate his foot/leg are Plaintiff's hearing testimony and a note written by Ms. Meade. The ALJ addressed both. Regarding Ms. Meade's opinion, the ALJ stated that she found it only minimally persuasive.[9] The ALJ explained that Ms. Meade failed to provide any objective support for the leg elevation and her opinion seemed to be based on Plaintiff's subjective allegations. *See* R. 29. The record supports the ALJ's conclusions. Ms. Meade's treatment notes contain little objective information; instead, her notes consist primarily of

---

[8] "APN/CNP" stands for advanced nurse practitioner/certified nurse practitioner. *See* Medical Abbreviations & Acronyms, https://openmd.com/dictionary/medical-abbreviations (last visited Feb. 4, 2022).

[9] Notably, Plaintiff does not contest this assignment of weight.

8

subjective information that Plaintiff reported to her. *See* R. 998, 1000. Additionally, on the medical opinion form that Ms. Meade filled out, she merely underlined the phrase "need to elevate leg" and for her response to the question of what medical findings supported the limitation, she wrote "again knee pain," which is not a medical finding. *See* R. 968; 20 C.F.R. § 404.1529 ("[S]tatements about your pain . . . will not alone establish that you are disabled. There must be objective evidence from an acceptable medical source."). "[A]n ALJ does not owe any deference to the portion of a treating physician's opinion based solely on the claimant's subjective complaints." *Karr v. Saul,* 989 F.3d 508, 512 (7th Cir. 2021).

In addition, the ALJ noted that no other medical expert opined that Plaintiff needed to elevate his leg. R. 74-75. This is significant because there were four physicians who offered evidence relative to Plaintiff's RFC: two state agency consultants, Dr. Cohen, who was Plaintiff's worker's compensation physician, and Dr. Goldstein, who was the impartial medical expert called to testify at the hearing. *See* R. 65-70, 85-87, 98-100, 938-41, 943-45. The ALJ found all four of these opinions persuasive. *See* R. 28.[10] None of these physicians found that Plaintiff needed to elevate his leg. *See Zoch v. Saul*, 981 F.3d 597, 601-02 (7th Cir. 2020) (finding persuasive that, aside from one physician whose opinion was reasonably rejected, no other physician during the relevant period opined that the plaintiff could not handle sedentary work).

With respect to Plaintiff's own testimony about needing to elevate his leg to relieve pain, the ALJ did reference it in her decision. *See* R. 26. Moreover, the ALJ highlighted evidence in the record that provided a basis for discounting that testimony. The ALJ noted the following: there was a 2 ½ year-long gap in treatment, suggesting tolerance of his symptoms; Plaintiff's ability to perform multiple activities of daily living suggested that his pain symptoms did not impair his

---

[10] Again, Plaintiff does not contest the assignment of weight to these physicians' opinions.

9

abilities; Plaintiff admitted in May of 2018 that he does not take any medications for his symptoms; and he applied for jobs that required standing and walking as a primary job function. *See* R. 26-27. Plaintiff challenges only two of these bases which the Court will address below.

### 2. Lack of treatment

At the hearing, the ALJ questioned Plaintiff about his reason for not seeking treatment between December 2015 and May 2018:

> Q   And when was the last time you saw an ortho specialist?
> A   I don't – December of 2015 is the last time I've seen Dr. Cole.
> Q   Okay. And have you seen any ortho specialist since then?
> A   No.
> Q   Any reason you haven't?
> A   It's not been approved.
> Q   Worker's Comp hasn't approved it.
> A   Right.
> Q   Does your wife work?
> A   Yes.
> Q   And have – so you do have other insurance? Am I correct? I'm just not understanding why? I understand that Worker's Comp doesn't approve of it. What would stop you from getting another opinion if you are having the kind of pain and the limitations you are having?
> A   I am not sure.
> Q   You don't know why you are having –
> A   Affordability.
> Q   But you do have insurance through your wife also. Am I correct?
> A   Yes.
> Q   And so you don't know why you haven't gotten another opinion?
> A   No.

R. 55-56. Plaintiff's counsel questioned him on the same issue:

> Q   [Y]ou talked about seeing Dr. Cole last in December of 2015. When you stopped treating with him did he have any other treatment recommendations for you?
> A   He – basically what he said is he knows there is nothing more I can do.
> Q   Okay. And then you did see an orthopedic physician in May of last year at the request of a Worker's Comp insurance company, correct?
> A   Yes. And they sent me to their doctor. Yes.
> Q   That was a onetime evaluation. Okay. It wasn't a treatment. It was an evaluation.

R. 56-57.

In her decision, the ALJ found that Plaintiff's lack of treatment between December 2015 and May 2018 suggested "tolerance of his symptoms." R. 26. Plaintiff argues that an ALJ must not draw inferences about a claimant's condition from his infrequency of treatment unless they have explored the claimant's explanations for lack of medical care and, here, Plaintiff did provide an explanation. Pl.'s Br. at 14, Dkt. 21 (citing *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008). Plaintiff asserts that he testified that he stopped treating in December 2015 because his worker's compensation insurance had not approved treatment and because Dr. Cole had told him there was nothing more to do for him. Pl.'s Br. at 14, Dkt. 21. Plaintiff contends that his testimony about Dr. Cole is consistent with Ms. Meade's medical records from August 2018. *Id*. at 14-15; *see* R. 977.

The Commissioner responds that lack of treatment is a valid and common rationale used to discount a claimant's credibility. Def.'s Br. at 12, Dkt. 26 (citing *Carlson v. Berryhill*, No. 17 CV 50122, 2018 WL 5279168, at *6 (N.D. Ill. Oct. 24, 2018). She also points out that the ALJ did properly inquire into Plaintiff's reasons for not seeking treatment and relied on his testimony that he did not know why he did not seek additional treatment despite having insurance. Def.'s Br. at 12, Dkt. 26.

An ALJ must justify her evaluation of a plaintiff's subjective allegations with "specific reasons supported by the record." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013). "Because the ALJ is in the best position to determine a witness's truthfulness," an ALJ's assessment should not be overturned "unless it is patently wrong." *Morrison v. Saul*, 806 F. App'x 469, 474 (7th Cir. 2020) (unpublished) (citing *Shideler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012)). An ALJ's assessment is patently wrong if the decision lacks any explanation or support. *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017). Not all of the ALJ's reasons must be valid in a subjective

11

symptom analysis, "as long as *enough* of them are." *Halsell v. Astrue*, 357 F. App'x 717, 722 (7th Cir. 2009) (unpublished) (emphasis in original).

"An ALJ is entitled to consider the course of a claimant's treatment." *Prill v. Kijakazi*, 21-1381, 2022 WL 121143, at *7 (7th Cir. Jan. 13, 2022) (citing 20 C.F.R. § 404.1529(c)(3)(v)). However, an ALJ must explore the reasons for a claimant's lack of treatment before drawing negative inferences about the claimant's symptoms. *See Ray v. Berryhill*, 915 F.3d 486, 490-91 (7th Cir. 2019); *Thomas v. Colvin*, 534 Fed. App'x. 546, 552 (7th Cir. 2013) (unpublished). Yet, simply because a claimant offers an explanation does not mean that an ALJ is required to accept that explanation as true. *See Stepp v. Colvin*, 795 F.3d 711, 720 (7th Cir. 2015) ("[A]n ALJ is free to discount the applicant's testimony on the basis of the other evidence in the case.") (internal quotations omitted); *Fuchs v. Astrue*, 873 F. Supp. 2d 959, 974 (N.D. Ill. 2012) ("[A]n ALJ is never required to accept a claimant's testimony as true.").

In this case, the ALJ did inquire about Plaintiff's reasons for not seeking medical treatment during that 2 ½-year timespan, as set forth above. Although Plaintiff testified that he did not seek medical treatment because his worker's compensation insurance did not approve it and Dr. Cole had told him there was nothing else they could do, he did not have an answer to the ALJ's follow-up question of why Plaintiff did not seek a second opinion using the insurance he had through his wife's job. As the finder of fact, the ALJ was entitled to draw an inference that Plaintiff's lack of treatment suggested tolerance of his symptoms. *See Berger v. Astrue*, 516 F.3d 539, 546 (7th Cir. 2008); *see also Masso v. Colvin*, 1:14-CV-04250, 2015 WL 3687106, at *12 (N.D. Ill. June 10, 2015) (it was permissible for the ALJ to consider the claimant's failure to seek treatment because the claimant was "reticent about the details" about his worker's compensation benefits having expired, casting doubt on the credibility of his pain allegations); *Tirado v. Colvin*, 12 C 5146, 2013

WL 4836692, at *16 (N.D. Ill. Sept. 10, 2013) (the ALJ could properly consider lack of treatment because the claimant's evidence of lack of insurance was "weak"); *Firkin v. Astrue*, 11 C 578, 2012 WL 1454002, at *10 (N.D. Ill. Apr. 25, 2012) (the ALJ did not err in considering the claimant's failure to seek treatment because the claimant had not utilized an available alternative means of paying for medical treatment); *Stamps v. Astrue*, 09 C 7026, 2010 WL 5149284, at *22 (N.D. Ill. Dec. 10, 2010) (same). In fact, the Court is expected to give deference to an ALJ's factual determinations, such as an evaluation about the course of treatment. *See Simila v. Astrue*, 573 F.3d 503, 519 (7th Cir. 2009). Therefore, the Court concludes that the ALJ was not patently wrong to consider Plaintiff's gap in treatment in her evaluation of Plaintiff's symptoms.

### 3. Job search testimony

At the hearing, the ALJ questioned Plaintiff about his ongoing job search:

> Q     What kind of jobs are you looking for?
> A     Anything to get me out of the house to be quite honest.
> Q     Are you looking for full-time jobs?
> A     Yes. . . I have . . . been doing a job search for over three years.
> Q     Okay. And what type? Where have you applied?
> A     I've tried Hardee's, Wal-Mart, office positions.
> Q     What kind of jobs are you looking for at . . . Wal-Mart or Hardee's?
> A     I don't know the specific name of the job. They are called team members . . .
> Q     Okay. . . . Now some of these jobs would require you to be on your feet most of the day though. Is that correct?
> A     Yes.
> Q     And you think you could do those jobs?
> A     No.
> Q     . . . Why are you applying for them if you don't think you can do them?
> A     I haven't applied to them. Standing up jobs in quite awhile. I've tried applying at like parts stores to deliver parts. . . . That way I'm walking a little bit and still sitting in the truck.

R. 43-45. Later, Plaintiff's counsel questioned him on his job search, as well:

> Q     [T]he judge asked you about, you know, you looking for these jobs. You have a pending Worker's Compensation case from your injury. Is that correct?
> A     Yes.

13

> Q But are you basically required to look for work to continue getting benefits?
> A Yes.
> Q Okay. And like you've talked about, you've been looking for at least three years now with no success.
> A Correct.

R. 49-50. In her decision, the ALJ found that Plaintiff's "search for employment that required standing and walking as a primary job function" suggested "his belief that residual pain symptoms would not impair his ability to perform such tasks." R 27.

Plaintiff argues that the ALJ mischaracterized his testimony. Pl.'s Br. at 15, Dkt. 21. He contends that the ALJ completely ignored his testimony that he did not think he could do those jobs and that he was applying to places where he could alternate between sitting and standing. *Id*. Plaintiff also points to his testimony where he stated that looking for work was a requirement for receiving worker's compensation benefits. *Id*. The Commissioner argues that the ALJ considered Plaintiff's testimony in conjunction with his reported daily activities and that the ALJ's conclusion was reasonable. Def.'s Br. at 13, Dkt. 26. The Commissioner also contends that the ALJ did not mischaracterize Plaintiff's testimony, because he did not specify when he stopped applying to "standing jobs." *Id*. Finally, the Commissioner asserts that, even if Plaintiff's argument were correct, remand would still not be warranted because he does not challenge much of the ALJ's subjective symptoms analysis and cannot show that it was patently wrong. *Id*. at 13-14.

The Court concludes that the ALJ did not err in her consideration of the fact that Plaintiff had been applying for jobs that involved standing and walking for three reasons. First, with respect to the argument that the ALJ mischaracterized Plaintiff's testimony, the Court notes that the ALJ was not obliged to believe all of his testimony. *See Johnson v. Barnhart*, 449 F.3d 804, 805 (7th Cir. 2006); *Robinson v. Astrue*, 1:11-CV-01591-DML, 2013 WL 1002883, at *4 (S.D. Ind. Mar. 13, 2013) ("[An ALJ] is not required to accept the claimant's statements blindly."); *see also*

*Craft,* 539 F.3d at 678 (because an ALJ evaluates credibility by questioning and evaluating a live witness, the ALJ's credibility finding is reviewed deferentially and will not be set aside unless it is "patently wrong"). As set forth above, Plaintiff's testimony was somewhat contradictory. The ALJ's first line of questioning asked about his job search in the present tense and Plaintiff provided answers in the present tense, as well. He even states that he was looking for "anything" to get him out of the house. It was not until the ALJ pointed out that the jobs he testified about applying to would require being on his feet that he began to backpedal on that testimony. It is clear that the ALJ did not believe Plaintiff's attempt to rescind his earlier testimony, and the ALJ was entitled to do so.

Second, the Seventh Circuit has analyzed a similar issue in *Schmidt v. Barnhart*, 395 F.3d 737 (7th Cir. 2005). In *Schmidt*, the ALJ had included the claimant's application for and receipt of unemployment compensation benefits among a long list of factors adversely affecting the claimant's credibility regarding his subjective complaints. *Id*. at 746. Specifically, the ALJ stated that "the claimant testified that he applied for and collected unemployment compensation . . . which required ready-to-work certification, and he also admitted that he has applied for a number of jobs since that time, but has not been hired for these jobs." *Id*. The Seventh Circuit acknowledged that they had previously held that "employment is not proof positive of ability to work," *see Wilder v. Apfel,* 153 F.3d 799, 801 (7th Cir. 1998), but explained:

> [W]e are not convinced that a Social Security claimant's decision to apply for unemployment benefits and represent to state authorities and prospective employers that he is able and willing to work should play absolutely *no* role in assessing his subjective complaints of disability. To what extent such considerations may factor into the analysis is better left for another case, because here the ALJ regarded Schmidt's unemployment experience as one of many factors adversely impacting his credibility.

15

*Schmidt*, 395 F.3d at 746 (emphasis in original); *see also Hughes v. Colvin*, 664 Fed. App'x. 587, 591 (7th Cir. 2016) (unpublished).

Here, Plaintiff testified that he had been searching for a job for over three years because, in order to continue receiving worker's compensation benefits, he had to be looking for work. R. 44, 50. This is similar to the plaintiff in *Schmidt*, who had been applying for jobs in order to receive unemployment compensation benefits. As noted in the quote block above, the Seventh Circuit has indicated that this sort of representation of being able and willing to work *can* play a role in a subjective symptom evaluation. Additionally, similar to the ALJ's analysis in *Schmidt*, this was only one of many factors that the ALJ cited in support of her analysis. *See, e.g.*, R. 26-27 (referencing that Plaintiff's physicians' noted inconsistencies in gait and symptomatology; he was not taking any medications; he was able to heel and toe walk bilaterally; and Dr. Cohen's opinion that there were no objective findings to support Plaintiff's antalgic gait).

Third, courts in this circuit have found that an ALJ can properly take into consideration the fact that a claimant is actively applying for work while also seeking disability benefits. *See Yost v. Berryhill*, 15 C 585, 2017 WL 1833183, at *4 (N.D. Ill. May 5, 2017) (affirming the ALJ's evaluation which concluded that the claimant's symptoms were not as limiting as she claimed because, *inter alia*, she had been "actively seeking employment"); *Schramm v. Astrue*, 09-C-1197, 2011 WL 1297285, at *6 (E.D. Wis. Mar. 31, 2011) (discounting the claimant's credibility in part because he had been applying for new jobs). As such, it was not error for the ALJ to consider Plaintiff's testimony about applying for jobs in her subjective symptom evaluation.

Moreover, as set forth above, there were other bases for the ALJ's credibility determination that Plaintiff did not contest. The ALJ pointed to Plaintiff's activities of daily living, which included: driving daily to take his children to and from school and to the grocery store 2-3 times a

16

week, R. 342, 344, 367, 369; dressing and undressing without assistance, R. 919; handling his personal hygiene, R. 918; preparing meals, R. 343, 368; and ambulating without an assistive device, R. 918. The ALJ also pointed to the inconsistent use of pain medication and inconsistencies in his gait, i.e., walking with an antalgic gait in the exam room and without an antalgic gait in the hallway. R. 26. Based on the totality of the ALJ's symptoms analysis, the Court concludes that it was not patently wrong.

### IV. Conclusion

For the foregoing reasons, Plaintiff's motion for summary judgment is denied, the Commissioner's motion is granted, and the ALJ's decision is affirmed.

Date: February 4, 2022        By:    Lisa A. Jensen
                                                                   United States Magistrate Judge